1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEVIN L. DECKER,

11           Plaintiff,               No. 2:07-cv-1379 FCD JFM (PC)

12      vs.

13   BRONZON YSLAS,

14           Defendant.          FINDINGS & RECOMMENDATIONS

15   _____/

16           Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  On August 12, 2008, defendant Yslas, a Sacramento County Deputy, filed a

18   motion for summary judgment.

19           This action is proceeding on plaintiff's complaint, filed July 12, 2007, in which he

20   contends that on March 4, 2007, defendant Yslas used excessive force while plaintiff was at pill

21   call, resulting in physical and mental injuries.

22               SUMMARY JUDGMENT STANDARDS UNDER RULE 56

23           Summary judgment is appropriate when it is demonstrated that there exists "no

24   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

25   matter of law."  Fed. R. Civ. P. 56(c).

26   /////

1

1   Under summary judgment practice, the moving party

2   always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
3   pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
4   demonstrate the absence of a genuine issue of material fact.

5   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

6   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

7   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

8   to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

9   after adequate time for discovery and upon motion, against a party who fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

12  concerning an essential element of the nonmoving party's case necessarily renders all other facts

13  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

14  whatever is before the district court demonstrates that the standard for entry of summary

15  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

16   If the moving party meets its initial responsibility, the burden then shifts to the

17  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

18  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

19  establish the existence of this factual dispute, the opposing party may not rely upon the

20  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

21  form of affidavits, and/or admissible discovery material, in support of its contention that the

22  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

23  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

24  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

25  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

26  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

2

1  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

2  1436 (9th Cir. 1987).

3          In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10         In resolving the summary judgment motion, the court examines the pleadings,

11 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

13 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

14 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

15 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

16 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

17 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

18 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

19 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

20 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

21 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

22         On October 24, 2007, the court advised plaintiff of the requirements for opposing

23 a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

24 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

25 /////

26 /////

1              ANALYSIS

2   A. <u>Disputed Facts</u>

3      1. In his verified complaint, plaintiff states:

4      On 3-4-07[1] I was in line at pill call and over the intercom came a
      voice stating "Hey you!" So I press[ed] the button and said "yes,
5      sir." Then the voice said "Hang up the phone." I said O.K. But
      the voice said "[Shut] up!  Before I come out there and put those
6      crutches up your ass!"  Then I said "no you won't, I'll tell my
      lawyer."  Then all of a sudden . . . Deputy Yslas rush[ed] me [and]
7      started choking me.  Then [he] slam[med] me to the ground
      reinjuring my current injuries.  Now I have to have surgery due to
8      Deputy Yslas' assault.

9 (Complaint at 8.)  In his deposition, plaintiff contended he "was hollering in pain" and told

10 defendant that his "hip was cracked and it hurts."  (Decker Dep. at 16.)  Plaintiff states he saw a

11 Sacramento County Jail orthopedic doctor the next day, who noticed plaintiff's injuries caused by

12 defendant Yslas and who scheduled plaintiff for surgery on his left hip.  (Decker Dep. at 16, 25.)

13      In his unverified citizen complaint form, plaintiff states his "arms were wrenched

14 behind [his] back causing [him] excruciating pain and reinjuring [his] fractured clavicle."

15 (Decker Dep., Ex. 2.)  Plaintiff claims he was taken for an x-ray on April 21, 2007, and on June

16 1, 2007, he was taken to UCD for a CAT-scan and surgery to repair his left femur and ankle[2]

17 caused by defendant Yslas' use of excessive force.  (<u>Id.</u>)

18      2. Defendant Yslas states he was working on the medical floor of the jail on

19 March 3, 2007, a Saturday.  (Yslas Decl. at 1.)  Defendant Yslas stated plaintiff was

20 argumentative and refused to comply with orders, so defendant determined to escort plaintiff

21 back to his cell.  (Yslas Decl. at 2.)  Because crutches can be used as weapons, defendant Yslas

22

23    [1] There is some confusion in the record as to the date of this incident.  In his deposition,
  plaintiff stated he believed this incident occurred in June, 2007.  (Decker Dep. at 13-14.)  The
24  incident report prepared by defendant Yslas after the incident was dated March 3, 2007.  (Yslas
  Decl., Ex. A.)  Plaintiff's inmate grievance form states the incident occurred on March 4, 2007.
25  (Decker Dep., Ex. 1.)

26    [2] Plaintiff has not alleged ankle injury in the instant action.

1   could not allow plaintiff to keep his crutches during the escort back to plaintiff's cell.  (Yslas

2   Decl. at 2.)  Defendant Yslas planned to walk plaintiff back to his cell without the crutches and

3   allow plaintiff to lean on him if needed.  (Yslas Decl. at 2.)

4          Defendant Yslas took plaintiff by the right arm and moved him closer to the wall

5   so plaintiff could use the wall for support, if necessary, as defendant Yslas relieved plaintiff of

6   his crutches.  (Yslas Decl. at 2.)  Defendant Yslas saw plaintiff clench his fists.  (Yslas Decl. at

7   3.)  Because clenched fists are often a precursor to physical resistance by an inmate, defendant

8   Yslas used a rear wrist lock on plaintiff's right arm to gain control of him.  Defendant Yslas then

9   performed a controlled assist, lowering plaintiff to the ground while supporting him from his

10  right side.  Defendant Yslas lowered plaintiff to the ground to limit his ability to take a swing at

11  defendant.  (Yslas Decl. at 3.)  Defendant Yslas directed plaintiff to stop arguing and to unclench

12  his fists.  Plaintiff refused to comply.  Defendant Yslas took plaintiff's left wrist and placed both

13  of his hands in the handcuff position behind his back, leaning against them with his knee, to hold

14  plaintiff in place until other officers arrived to assist.  (Yslas Decl. at 3.)

15          When plaintiff agreed to comply with directives, defendant Yslas and Deputy

16  Youngberg, who had arrived to assist, helped plaintiff up to a standing position.  (Yslas Decl. at

17  3.)  Defendant Yslas gave plaintiff three options:  get in line for his medications, return to his cell

18  or be escorted to his cell.  Plaintiff elected to take his medications.  (Yslas Decl. at 3.)  Plaintiff

19  accepted his medications and returned to his cell at his usual pace without complaining of pain or

20  injury.  (Id.)

21          B.  Undisputed Facts[3]

22          1.  In August 2006, plaintiff was severely injured in an automobile accident,

23  which left him comatose for sixty days; plaintiff suffered multiple injuries, including fractures in

24  his neck, ribs, femur, ankle and clavicle.

25  _____

26      [3]  Unless otherwise noted, the statement of undisputed facts is taken from Defendants'
    Statement of Undisputed Facts, filed August 12, 2008.  (Docket No. 26-3.)

1        2.  Plaintiff alleges his hip surgery took place on June 20, 2007 at the UCD

2  Medical Center.  (Decker Dep. at 30; Complaint, Ex. C.)

3        3.  On June 20, 2007, plaintiff was sent to UCD Medical Center where Dr. Mark

4  A. Lee performed a left hip valgus intratrochanteric osteotomy intended to remedy a nonunion in

5  plaintiff's left femur.  (Neblett Decl. at 2.)

6        4.  During his deposition, plaintiff stated his only injuries attributable to defendant

7  Yslas' actions were the hip condition for which he received surgery,[4] temporary pain in his left

8  clavicle, and "mental psychological damage."  (Decker Dep. at 31, 42.)

9        5.  On April 12, 2007, Dr. Peter Neblett recommended plaintiff's hip surgery after

10  he examined plaintiff in the Main Jail's orthopedic clinic and diagnosed the nonunion of

11  plaintiff's left femur.  (Neblett Decl. at 1-2.)

12        6.  Dr. Neblett opined that plaintiff's nonunion could only have developed over a

13  period of several months, and could not have been caused by a struggle with a deputy in March

14  2007.  (Neblett Decl. at 3.)

15        7.  Dr. Lee opined that plaintiff's nonunion was caused by the severity of his

16  initial injuries and his post-operative deep infection.  (Dr. Lee Dep. at 12.)

17        8.  Although Dr. Lee stated that nonunion can sometimes be caused by a

18  subsequent trauma, he testified that he saw no signs that plaintiff's malunion had been caused by

19  a subsequent trauma.  (Dr. Lee Dep. at 16.)

20        9.  Plaintiff complained of pain in his left clavicle on March 3 and 5, 2007,

21  whereupon Dr. Bohdan Tomkiw referred him for an x-ray.  (Tomkiw Decl. at 2.)

22        10.  The March 6, 2007 x-ray showed no new fracture, only the old healed

23  fracture.  (Tomkiw Decl. at 2.)

24  /////

25

26     [4] Defendant avers that the record evidence demonstrates petitioner's hip condition was not caused by defendant's actions.

1      11.  Dr. Tomkiw opined that plaintiff did not reinjure his clavicle in March,

2  because the x-ray does not show a re-injury and a re-injury would have caused plaintiff difficulty

3  in using his crutches.  (Tomkiw Decl. at 7.)  Plaintiff did not complain of difficulty using his

4  crutches.

5      12.  In April of 2007, Dr. Neblett examined plaintiff and found only the old,

6  healed fracture of the clavicle.  (Neblett at 2, 3.)

7      13.  Shortly after the incident, plaintiff complained of a dislocated shoulder and

8  was seen by a nurse.  (Yslas Decl. at 3.)  Plaintiff did not complain of injury to his hip.

9      14.  Before leaving his shift that day, defendant Yslas wrote a PF10 incident

10  report to document the incident.  (Yslas Decl. at 4; Ex. A.)

11      C.  Excessive Force

12      Defendant Yslas seeks summary judgment on the grounds that (1) he did not use

13  excessive force against plaintiff in an attempt to punish him and, therefore, he did not violate his

14  constitutional rights; (2) he is entitled to qualified immunity from liability; and (3) even if the

15  court finds a triable issue of fact remains for trial, plaintiff's claim for mental or emotional

16  damages is barred by 42 U.S.C. § 1997e(e) because his physical injuries were de minimis.

17      Respondent has requested the court take judicial notice of the original Sacramento

18  Superior Court file for The People v. Kevin Lamont Decker, case no. 06F11193.  (Docket No.

19  27.)  Good cause appearing, the request will be granted.  It appears plaintiff was a pretrial

20  detainee because plaintiff entered a guilty plea on May 16, 2007, and was sentenced on July 30,

21  2007 (id. at 6, 12); the incident at issue here took place in March of 2007.

22      A pretrial detainee is not protected by the Eighth Amendment's proscription

23  against cruel and unusual punishment as he has not been convicted of a crime.  See Bell v.

24  Wolfish, 441 U.S. 520, 535 & n.16 (1979); Ingraham v. Wright, 430 U.S. 651, 671-72 n.40

25  (1977).  A pretrial detainee is protected from punishment without due process under the Due

26  Process Clause of the Fourteenth Amendment.  See United States v. Salerno, 481 U.S. 739, 746-

7

47 (1987); Bell, 441 U.S. at 535-36.  However, the protections of the Due Process Clause are at least as great as those of the Eighth Amendment.  See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983); Gary H. v. Hegstrom, 832 F.2d 1430, 1432 (9th Cir. 1987).

> The Due Process clause protects pretrial detainees from the use of excessive force that amounts to punishment. Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Although the Supreme Court has not expressly decided whether the Fourth Amendment's prohibition on unreasonable searches and seizures continues to protect individuals during pretrial detention, id., we have determined that the Fourth Amendment sets the "applicable constitutional limitations" for considering claims of excessive force during pretrial detention. Pierce v. Multnomah County, 76 F.3d 1032, 1043 (9th Cir.1996), cert. denied, 519 U.S. 1006, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996).  Graham therefore explicates the standards applicable to a pretrial detention excessive force claim in this circuit.

> In Graham, the Supreme Court explained that determining whether a defendant officer's use of force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." 490 U.S. at 396, 109 S.Ct. 1865 (internal quotations omitted).  This analysis requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (whether seizure is reasonable under the Fourth Amendment is judged by the "totality of the circumstances").  [Footnote omitted.]

> Finally, the Graham Court admonished courts to examine the circumstances underlying a Fourth Amendment claim from the viewpoint of the reasonable officer on the scene, "rather than with the 20/20 vision of hindsight."  490 U.S. at 396, 109 S.Ct. 1865. For, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."  Id. at 396-97, 109 S.Ct. 1865.

Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197-98 (9th Cir. 2002).

A two-part test applies to analysis of the qualified immunity defense.  Martinez, at 1183 (citing Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  First, the court looks at "whether the

1  facts alleged 'show [that] the officer[s'] conduct violated a constitutional right," and second,

2  "whether the constitutional right in question was 'clearly established' such that 'it would be clear

3  to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Martinez,

4  id. (quoting Saucier, 533 U.S. at 201-02.)

5        In his opposition, plaintiff claims that he was assaulted by defendant Yslas and

6  that defendant's actions were not taken in good faith.  At his deposition, he reiterated the facts

7  contained in his verified complaint.  Plaintiff provided a copy of an undated sworn statement

8  signed by witnesses.  (Decker Dep., Ex. 2 at 2.)

9        First, in his opposition, plaintiff attempts to allege Monell-type[5] claims against the

10  Sacramento Sheriff's Department.  However, the Sacramento County Sheriff's Department is not

11  a defendant in this action.  Thus, plaintiff's allegations under Monell are not relevant to the

12  instant motion.

13        Second, plaintiff's allegation that defendant Yslas' actions caused an injury to his

14  hip requiring surgery is belied by the record evidence as well as the medical opinion of two

15  doctors.  Plaintiff has provided no evidence to the contrary.  Although plaintiff contends that he

16  saw the orthopedic surgeon the day after defendant Yslas allegedly assaulted him, the

17  documentary evidence demonstrates otherwise.  The record evidence suggests the incident at

18  issue here occurred on either March 3, 2007 or March 4, 2007.

19        It is undisputed that plaintiff's hip injury was diagnosed on April 12, 2007 and

20  that Dr. Neblett and Dr. Lee opined that the nonunion in his femur was related to the seriousness

21  of his injuries sustained in the automobile accident and the subsequent infection rather than any

22  subsequent trauma inflicted by defendant Yslas in March of 2007.  None of the medical records

23  provided by plaintiff attribute the nonunion of his femur to the incident that occurred in March of

24  2007.  Thus, defendant is entitled to summary judgment as to plaintiff's allegation concerning

25

26        [5] Monell v. Department of Social Servs., 436 U.S. 658 (1978).

9

1    hip injury.  Should this case go to trial, plaintiff may not allege he sustained an injury to his hip

2    as a result of the March 2007 incident.

3            Third, "42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need

4    not be significant but must be more than de minimis."  Oliver v. Keller, 289 F.3d 623, 627 (9th

5    Cir. 2002).  As noted above, both medical records and the declarations of two different doctors

6    confirm that the nonunion of plaintiff's hip was not based on the force applied by defendant

7    Yslas.  Plaintiff has provided no medical evidence or opinions to the contrary.  In addition,

8    during his deposition, plaintiff testified he sustained "temporary pain in his left clavicle."

9    Because plaintiff's documented physical injury sustained during the incident at issue here was

10   limited to temporary pain in his clavicle, plaintiff's claim of mental damages must also fail.

11           Fourth, a closer question is presented as to whether there remains a genuine

12   dispute of fact as to whether defendant Yslas used excessive force as punishment in March 2007.

13   Although plaintiff appended a sworn statement by witnesses at his deposition, he has not

14   provided the original declaration to the court.  In addition, the declaration does not contain

15   specific facts as to what took place on March 3 or 4, 2007.  Rather, the declaration is a

16   generalized statement that these witnesses have seen Deputy Yslas beating and abusing other

17   inmates.  None of the witnesses confirmed any of the facts set forth in plaintiff's complaint or in

18   his deposition.

19           Defendant argues that plaintiff has failed to offer facts supporting his allegation of

20   unreasonable force or to support his claims of injury.  By contrast, defendant has provided a

21   sworn declaration including detailed facts as to how he placed plaintiff in a control hold, lowered

22   him to the ground, and held him there until other officers arrived to assist because plaintiff was

23   belligerent, uncooperative and clenched his fists.

24           However, a verified complaint may be used as an opposing affidavit under Rule

25   56, as long as it is based on personal knowledge and sets forth specific facts admissible in

26   evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn. 10-11 (9th Cir.1995) (treating

1   plaintiff's verified complaint as opposing affidavit where, even though verification not in

2   conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were

3   true and correct, and allegations were not based purely on his belief but on his personal

4   knowledge).  Plaintiff's complaint was verified and therefore is considered as evidence in

5   evaluating the pending motion.

6           The court is aware that on summary judgment it is not to weigh the evidence or

7   determine the truth of the matters asserted but must only determine whether there is a genuine

8   issue appropriately resolved by trial.  <u>Summers v. A. Teichert & Son. Inc.</u>, 127 F.3d 1150, 1152

9   (9th Cir. 1997).  The evidence must be viewed in the light most favorable to the nonmoving

10  party, and the inferences to be drawn from the facts must be viewed in a light most favorable to

11  the nonmoving party.  <u>See</u> <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631

12  (9th Cir.1987).  Nonetheless, in order for any factual dispute to be genuine, there must be enough

13  doubt for a reasonable trier of fact to find for plaintiff in order to defeat defendants' summary

14  judgment motion.  <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).

15          The court finds that plaintiff's complaint and deposition establish a genuine issue

16  of material fact as to whether he was noncompliant or uncooperative prior to the use of force and

17  whether defendant used force for the sole purpose of punishing plaintiff.  Because plaintiff

18  declares defendant Yslas threatened to shove plaintiff's crutches up his ass, an inference is raised

19  as to whether defendant used force to punish plaintiff.  This inference is further bolstered by

20  plaintiff's statement that defendant Yslas ran out of the control booth and put his hands around

21  plaintiff's neck and started choking plaintiff and slammed him to the ground.  (Decker Decl. at

22  16; Complt. at 8.)  Plaintiff also states he hung up the phone when asked and returned to pill call.

23  Plaintiff complained of pain to his left clavicle on March 3, 2007 and March 5, 2007.  (Tomkiw

24  Decl. at 2.)  It is reasonable to attribute clavicle pain to choking or excessive force in wrenching

25  plaintiff's arm behind his back.

26  /////

1    Although defendant Yslas denies these allegations by detailed declaration,

2  viewing the evidence in the light more favorable to plaintiff,  if the jury believes plaintiff was

3  compliant, hung up the phone and returned to pill call, the essence of plaintiff's claim is that

4  there was no need for the application of force.  A reasonable jury could find that if there was no

5  need for the application of force, the degree of force exceeded the amount of force permissible.

6  See McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir. 1994) (Eighth Amendment violation

7  established when guard hit inmate accused of stealing cigarettes; inmate suffered pain but no

8  permanent injury.)  Moreover, if the jury believes defendant Yslas threatened plaintiff, then ran

9  out and began choking him and slammed him to the ground, a reasonable jury could find

10  defendant's use of force was excessive.

11    Defendant's citation to Scott v. Harris, ___ U.S. ___, 127 S.Ct. 1769, 1776 (2007)

12  is unavailing.  In Scott, the Supreme Court found that because the record included a videotape of

13  the entire high-speed chase at issue, there could be no dispute of material fact with respect to the

14  situation the officers confronted and that the plaintiff's version of events had been "utterly

15  discredited" by the videotape.  Id., 127 S.Ct. at 1775-76.  No such indisputable evidence is

16  contained in the record before the court on this motion.  Rather, the identified disputed issues of

17  material fact are supported by plaintiff's verified complaint and deposition.  What defendant asks

18  this court to do is make credibility determinations with respect to defendant's statements made in

19  his declaration and plaintiff's statements made in his deposition, which this court cannot do on

20  summary judgment.  Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1036 (9th Cir.

21  2005).

22    Finally, defendant argues that plaintiff's allegation of temporary clavicle pain is a

23  de minimis injury insufficient to support a constitutional violation.

24    Inherent in the Eighth and Fourteenth Amendments is the principle that "not . . .

25  every malevolent touch by a prison guard gives rise to a federal cause of action.  See Johnson v.

26  Glick, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the

1    peace of a judge's chambers, violates a prisoner's constitutional rights"). <u>Hudson v. McMillan</u>,

2    503 U.S. 1, 9, 112 S.Ct. 995, 1000 (1992).  To permit those in custody to bring excessive force

3    claims without any showing of injury would violate that very principle.

4          Here, however, plaintiff complained of pain to his left clavicle that was sufficient

5    to warrant having his clavicle x-rayed.  Although the x-ray report revealed that plaintiff's clavicle

6    had not been re-fractured, the pain alleged was sufficient to exceed the de minimis threshold,

7    particularly in light of plaintiff's allegations as to defendant Yslas' conduct.

8          Because genuine issues of material facts remain at issue, defendant Yslas is not

9    entitled to qualified immunity.

10          Accordingly, IT IS HEREBY ORDERED that defendant's August 12, 2008

11    request for judicial notice (docket no. 27) is granted; and

12          IT IS HEREBY RECOMMENDED that defendant's motion for summary

13    judgment, filed on August 12, 2008 (docket no. 26), be granted in part and denied in part:

14          1.  Defendant Yslas be granted summary judgment as to plaintiff's allegation that

15    he sustained injury to his hip during the use of force on March 3 or 4, 2007;

16          2.  Defendant Yslas be granted summary judgment as to plaintiff's claim for

17    mental damages; and

18          3.  In all other respects, defendant's motion for summary judgment be denied.

19          These findings and recommendations are submitted to the United States District

20    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

21    days after being served with these findings and recommendations, any party may file written

22    objections with the court and serve a copy on all parties.  Such a document should be captioned

23    "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

24    /////

25    //////

26    /////

1  failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  November 6, 2008.

4

5

6

UNITED STATES MAGISTRATE JUDGE

7  001; deck1379.msj

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26